747 P.2d 599

**Dwight TISDEL, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**United Parcel Service, Respondent Employer,**

**Liberty Mutual Insurance Co., Respondent Carrier.**

**No. 1 CA–IC 3515.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 4, 1987.

Review Granted Jan. 19, 1988.

Lawrence P. Nicholls, P.C. by Lawrence P. Nicholls, Phoenix, for petitioner.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith and Lawrence H. Lieberman, Phoenix, for respondent employer and respondent carrier.

## OPINION

FROEB, Judge.

In this special action review, we determine that a claimant is entitled to interest on permanent benefits from the time they are allowed until the time they are paid.

On April 22, 1970, the claimant suffered a compensable injury to his right knee

while working for respondent employer, United Parcel Service. Claimant's average monthly wage was established at $830.35. On November 29, 1971, claimant's doctor authored a medical report stating that claimant's condition had become stationary, and that claimant could be discharged with a 10% disability of his right lower extremity.

Based upon the doctor's report, respondent carrier, Liberty Mutual Insurance Co., issued a notice of claim status stating that claimant's medical benefits were terminated on November 29, 1971, and that the "amount of permanent benefits, if any, will be given by subsequent notice." No further notices of claim status were issued, no further claim was made by claimant, and no permanent benefits were paid by Liberty Mutual. Claimant was not represented by counsel during these proceedings.

In 1984, claimant sustained a second industrial injury and obtained the services of an attorney to pursue his claim. The attorney discovered that claimant should have been paid permanent benefits commencing in December, 1971. Claimant's counsel sent a letter on November 27, 1984, to the Industrial Commission seeking the Commission's help in obtaining the past due benefits.

On November 30, 1984, the Commission's claims manager sent a letter to Liberty Mutual stating:

> In view of the above, it appears that this matter can be resolved without a hearing by your issuance of a Notice of Permanent Disability, awarding the applicant benefits for 10% functional loss of the right lower extremity as evidenced by the attached copy of the terminating medical report.

The claims manager responded to the Commission by letter dated April 15, 1985, stating:

> It is evident from this analysis that a Notice of Permanent Disability was not issued, nor were the permanent benefits paid. From the documents in the Industrial Commission's file, the applicant has a scheduled rating of 10% impairment to the leg. This would entitle him to 5

months of permanent compensation at a rate of $415.18 per month.

A notice of permanent disability benefits was issued on the same date. Claimant was paid benefits of $2,075.90 on October 30, 1985. This was the full amount due but it did not include any interest.

On November 26, 1985, a hearing was held on the issue of claimant's entitlement to interest. Counsel for both parties stipulated that it was a mistake on the part of Liberty Mutual not to issue a notice of permanent disability in December, 1971, regarding claimant's permanent benefits. The administrative law judge held that because there was nothing in the workers' compensation statutes specifically authorizing an award of interest, the Commission was without jurisdiction to award interest. Claimant's request for hearing was dismissed. The dismissal was affirmed upon review. We now address the question of whether it was error to deny an award of interest to claimant.

Claimant argues that the general interest statute should have been applied to the amount owed by respondents beginning in 1971. A.R.S. § 44–1201 states that "interest for *any legal indebtedness* shall be at the rate of six dollars upon one hundred dollars for a year, unless a different rate is contracted for in writing." (Emphasis added.) (In 1980 the statute was amended to allow 10% interest as of April 23, 1980.) Respondents state that A.R.S. § 44–1201 does not apply because the statutory scheme in Arizona for workers' compensation is an exclusive remedy and no provision for the payment of interest is provided. Respondents refer us to A.R.S. § 23–1022(A) which states that the Workers' Compensation Act is the complete and exclusive remedy for injured workers against an employer. They also point to Arizona appellate decisions which hold that liability and compensation must be determined solely by resort to the Act. *Nation v. Weiner*, 145 Ariz. 414, 701 P.2d 1222 (App.1985); *Sandoval v. Salt River Project*, 117 Ariz. 209, 571 P.2d 706 (App. 1977); *Williams v. Industrial Commission*, 68 Ariz. 147, 202 P.2d 898 (1949).

Respondents also contend that the legislature indirectly dealt with the question of interest when it provided that permanent "compensation shall be paid as provided in such order or award and shall not be interrupted when there is a petition for hearing or appeal to a higher court," as well as directing that "[a]ctions and proceedings under this chapter ... shall be advanced for trial or hearing over civil actions...." See A.R.S. §§ 23–950 and 23–952. In summary, respondents argue that an employer is entitled to have his obligations and rights determined in accordance with the provisions of the Act, since the Act was adopted to replace remedies available at common law or by other statutes. *Sneed v. Belt*, 130 Ariz. 229, 635 P.2d 517 (App. 1981).

■ We reject respondents' arguments and hold that once an award for permanent benefits is issued, interest accrues on the award because the amount has become a "legal indebtedness" and the general interest statute applies. This is so because A.R.S. § 23–952 requires that it be paid even if further review is sought. In this case the unprotested notice of permanent disability, dated April 15, 1985, is tantamount to an award of benefits by the Industrial Commission for the purpose of accruing interest. Therefore, claimant is entitled to interest from this date and the award denying interest must be set aside.

■ Respondents' view that Arizona workers' compensation statutes provide the exclusive remedy to a claimant in this situation has only superficial appeal. The accrual of interest upon a "legal indebtedness" is not a "remedy" as such. It is a payment the general law provides for money owed but unpaid. The word "remedy" relates to the obtaining of benefits and compensation under the workers' compensation statutes. This is the remedy described by A.R.S. § 23–1022(A) as exclusive. The accrual of interest is not a "remedy."

We do not, therefore, view the allowance of interest upon an award as something which must necessarily be found within Arizona workers' compensation statutes.

Such being the case, there is no reason why the general interest statute in Arizona would not apply. Certainly, an award of compensation is a "legal indebtedness" in favor of the claimant and can be enforced as such. In this case, the notice of permanent disability issued by the carrier is in the same category.

Other jurisdictions have awarded interest under similar circumstances relying on general interest statutes. In *Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187 (Alaska 1984), the Alaska Supreme Court held that the absence of a specific statute authorizing interest upon workers' compensation awards does not preclude interest from being awarded. Instead, the court held that application of the state's general interest statute is proper and is in keeping with the spirit of the workers' compensation law. *See also Parker v. Brinson Constr. Co.*, 78 So.2d 873 (Fla.1955); *Chicago & Interurban Traction Co. v. Industrial Bd. of Illinois*, 282 Ill. 230, 118 N.E. 464 (1917); *Goodnite v. Farm Equip. Co.*, 234 Miss. 342, 106 So.2d 383 (1958); *Hanson v. North Dakota Workmen's Compensation Bureau*, 63 N.D. 479, 248 N.W. 680 (1933); *Campbell v. Walsh-Kaiser Co.*, 78 R.I. 290, 81 A.2d 684 (1951); and *Norman v. American Woolen Co.*, 117 Vt. 28, 84 A.2d 125 (1951).

■ The more difficult question under the particular facts of this case is whether claimant's benefits became a "legal indebtedness" in 1971 or 1984. We hold that a legal indebtedness did not arise until 1984 when what appears to have been a mutual mistake was discovered in connection with the 1983 injury claim. It was at this time that claimant became aware that benefits should have been paid to him beginning in December, 1971. When the matter was brought to the attention of Liberty Mutual in 1984, the latter agreed that claimant had sustained a scheduled 10% impairment of the right leg in 1971. Liberty Mutual then agreed that this entitled claimant to five months compensation of $415.18 per month for his scheduled claim. A notice of permanent disability benefits calculating the amount due was issued by the carrier on April 15, 1985. Claimant waived a hearing on the matter, but reserved the issue con-

cerning interest. Liberty Mutual eventually paid claimant the full amount due of $2,075.90, but objected to paying interest.

In our opinion, interest is not owing from 1971 because the proceedings in 1971 fell short of fixing a legal indebtedness. Liberty Mutual in 1971 had issued a notice of claim status terminating temporary benefits and discharging claimant with a permanent disability. The notice said "the amount of permanent benefits, if any, will be given by subsequent notice." Although conceded to have been a mistake, no further notices were issued. Claimant did not pursue the matter further until 1984, although he could have claimed the benefits and obtained a hearing in 1971 pursuant to A.R.S. § 23-1061(J).

In holding that what occurred in 1971 did not rise to the level of a "legal indebtedness," we agree with the point, raised by Liberty Mutual, that the notice of claim status issued in 1971 did not award a 10% impairment or any other amount. The percentage of impairment and resulting award of benefits might have been affected by a number of factors, including (1) the existence of a previous disability which could convert the scheduled into an unscheduled disability; (2) a claim by claimant that the resulting disability was greater than 10%; and (3) an attempt by the carrier to reduce the rating of disability by obtaining an independent medical examination. Thus, we hold that legal indebtedness such as would give rise to the accrual of interest did not occur in this case until the Notice of Permanent Disability Benefits was issued by Liberty Mutual on April 15, 1985.

In summary, we conclude that the award of the administrative law judge denying interest must be set aside and the matter remanded to the Industrial Commission for further proceedings consistent with this opinion, which will include the award of interest from April 15, 1985.

CONTRERAS, P.J., and BROOKS, J., concur.