845 P.2d 461

**DKI CORPORATION/SYLVAN POOLS,**
Petitioner–Employer,

**National Union Fire Insurance of Pittsburgh, Petitioner–Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Abel Millanez, Respondent–Employee.**

No. CV–91–0237–PR.

Supreme Court of Arizona,
En Banc.

Jan. 12, 1993.

Joseph L. Moore, Phoenix, for petitioner-employer and petitioner-carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Cecil A. Edwards, Jr., Phoenix, for respondent-employee.

OPINION

FELDMAN, Chief Justice.

We granted review in this workers' compensation case to determine whether interest awarded by the Industrial Commission of Arizona may accrue from the filing date of a petition to reopen, an important issue not directly controlled by any Arizona decision. *See* Ariz.R.Civ.App.P. 23(c)(4). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24, and Ariz. R.Civ.App.P. 23.

FACTS AND PROCEDURAL HISTORY

Abel Millanez injured his back in April 1982 while working for DKI Corporation/Sylvan Pools ("DKI"). DKI's compensation carrier, National Union Fire Insurance of Pittsburgh ("National"), accepted Millanez' compensation claim. In March 1984, National notified Millanez that his temporary benefits were being terminated and that the April 1982 injury resulted in an unscheduled permanent partial disabili-

ty. In July 1984, the Industrial Commission of Arizona ("Commission") awarded permanent partial disability benefits.

After experiencing increased back pain, Millanez filed a petition to reopen in October 1986, which National granted. By the end of 1986, Millanez' condition was stationary and National terminated his temporary benefits with no additional permanent impairment. In August 1987, the Commission awarded Millanez the same amount of permanent partial disability benefits that he had been awarded in 1984. Millanez protested this award.[1]

In November 1987, Millanez again experienced increased pain. On January 19, 1988, he filed a second petition to reopen, which National denied. Millanez protested this denial and requested interest on any benefits awarded.[2] An administrative law judge ("ALJ"), in a December 27, 1988, award, found that Millanez had a new, additional, or previously undiscovered condition related to the April 1982 injury. The ALJ awarded Millanez medical and temporary disability benefits. The ALJ also awarded interest on temporary compensation benefits from January 19, 1988 (the filing date of the petition to reopen) to December 27, 1988 (the date of the award). DKI and National (collectively "Petitioners") requested administrative review. On January 23, 1989, the ALJ entered an award with conclusions identical to the December 27, 1988 award.

Petitioners challenged the award before the court of appeals, which affirmed both the award of benefits and the interest award. *See DKI Corp./Sylvan Pools v. Industrial Comm'n*, 169 Ariz. 357, 819 P.2d 943 (Ct.App.1991) (2–1 decision). Petitioners asked this court to review the court of appeals' decision on the interest award.[3] We granted review to resolve the following issues:

1. Does the uncertainty and variability of temporary compensation benefits to which a worker may be entitled upon reopening of a claim make such entitlement "unliquidated" and, therefore, not subject to interest?

2. Alternatively, should liability for interest on temporary compensation benefits be applied prospectively only?

## DISCUSSION

A. Availability of Interest Under the Workers' Compensation Act

In *Tisdel v. Industrial Comm'n*, 156 Ariz. 211, 751 P.2d 527 (1988), we held that a claimant awarded benefits under the Workers' Compensation Act ("Act"), A.R.S. §§ 23–901 to 23–1091, was entitled to interest on past due compensation benefits. Thus, our starting point is *Tisdel*.

The claimant in *Tisdel* incurred a compensable injury in 1970. *Tisdel*, 156 Ariz. at 212, 751 P.2d at 528. His condition became stationary and the insurance carrier terminated his medical benefits effective November 29, 1971. In a December 23, 1971 notice of claim status, the carrier did not deny coverage and represented that the amount of claimant's permanent benefits would be set by a subsequent notice. *Id.* Contrary to this representation, however, no further notice was given. Only when the claimant incurred a second injury *in 1984*, and when he retained an attorney who pursued the 1971 claim, did the carrier issue a notice of permanent benefits. *Id.* Although admitting that the benefits had been due thirteen years earlier, the carrier refused to pay interest, *id.*, and the claimant challenged this refusal.

The Commission ruled that it had no jurisdiction to award interest. *Id.* The court of appeals held that the Commission had jurisdiction to award interest and that interest should begin to accrue in 1985—

---

1. Litigation of this August 1987 award was stayed pending the outcome of Millanez' January 19, 1988, petition to reopen and, accordingly, is not before us.

2. Millanez also alleged bad faith in the processing of his claim. *See* A.R.S. § 23–930. At oral argument before this court, counsel indicated

that this allegation was withdrawn prior to administrative resolution. In any event, the validity of the bad faith claim is not before us.

3. Throughout the administrative process and judicial review, Millanez has not challenged the interest award but rather seeks affirmance of the ALJ's award.

the date the carrier issued the notice of benefits. *Tisdel v. Industrial Comm'n,* 155 Ariz. 438, 441, 747 P.2d 599, 602 (Ct. App.1987). On review, we held that A.R.S. § 44–1201(A), providing for interest on any "indebtedness ... or other obligation," applied to claims under the Act and that an interest award was appropriate. *Tisdel,* 156 Ariz. at 212–14, 751 P.2d at 528–30. "When the carrier fails to timely pay a claimant's compensation, we do not believe it is contrary to the spirit of the Worker's Compensation Act to require interest from the date the benefits were due." *Id.* at 214, 751 P.2d at 530. Inherent in this holding is the principle that the Commission has jurisdiction to award interest. Thus, *Tisdel* clearly holds that interest on a workers' compensation award must be allowed when required by A.R.S. § 44–1201(A). The question then becomes when interest begins to accrue.

### B. When Interest Begins to Accrue

#### 1. When is there an "indebtedness ... or other obligation"?

■ The ALJ in this case found that interest ran from the date the petition to reopen was filed to the date of the initial administrative award. Thus, the issue is whether interest begins to accrue when a petition to reopen is filed, as the ALJ found, or at some other date. Again, we turn to *Tisdel.*

In *Tisdel,* the Commission found, *and the carrier did not dispute,* that permanent benefits had been due on December 23, 1971, and that the carrier had notice that benefits were due at that time. *Tisdel,* 156 Ariz. at 213, 751 P.2d at 529. "[T]he legal obligation for interest occurred ... when the carrier had notice of its obligation to pay permanent benefits." *Id.* Accordingly, we held that interest began to accrue on December 23, 1971. *Id.* Thus, although factually distinguishable,[4] *Tisdel*'s legal principle applies to this case: interest only begins to accrue when (1)

there is a legal "indebtedness ... or other obligation" to pay benefits *and* (2) when the carrier has "notice of [this] obligation to pay." *Id.* at 213, 751 P.2d at 529; *see* A.R.S. § 44–1201(A).

Applying this legal principle, it is clear that filing a petition to reopen does not create an obligation to pay benefits. In pursuing a disputed petition to reopen, the petitioner must show a "new, additional or previously undiscovered temporary or permanent condition," A.R.S. § 23–1061(H), before the Commission has authority to even reopen the claim, let alone to determine that an employer or carrier is obligated to pay any requested benefits. *See, e.g., Sneed v. Industrial Comm'n,* 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979); *London v. Industrial Comm'n,* 71 Ariz. 111, 116, 223 P.2d 929, 932 (1950). In this case, and by definition, the ALJ did not find that Millanez was entitled to any benefits until the date of the initial award. Filing the petition to reopen did not create any "indebtedness ... or other obligation" under A.R.S. § 44–1201(A) as construed in *Tisdel.* Nor did it constitute any other triggering event under A.R.S. § 44–1201(A). Accordingly, interest cannot begin to accrue on the date Millanez filed his petition to reopen.

This brings us squarely to the issue of what constitutes an "indebtedness ... or other obligation" under A.R.S. § 44–1201(A) for workers' compensation claims. An initial administrative award determines many of the parties' rights. Such an award resolves any dispute as to liability, creates an entitlement for the claimant, *see* A.R.S. § 23–1021, and is a liability for the employer or carrier, *cf.* A.R.S. § 23–966(A). Although an initial award is subject to administrative as well as judicial review, *see* A.R.S. §§ 23–942(D), 23–943, 23–951, 12–120.24, it is final if not challenged within thirty days, A.R.S. § 23–942(D). Furthermore, because an award is mailed to all parties, A.R.S. § 23–942(C), it also satisfies

---

**4.** For example, *Tisdel* decided when interest began to accrue under a notice of claim status, *id.* at 212–13, 751 P.2d at 528–29, while this case involves interest under an initial administrative award; *Tisdel* involved permanent disability benefits, *id.* at 212, 751 P.2d at 528, while this case involves temporary disability benefits.

*Tisdel*'s notice requirement, *Tisdel*, 156 Ariz. at 213, 751 P.2d at 529.

An initial administrative award, however, does not necessarily determine the amount of benefits due. *See Meva Corp. v. Industrial Comm'n*, 15 Ariz.App. 20, 24, 485 P.2d 844, 848 (1971) (citing cases); *see also* A.R.S. §§ 23–901(1). The ALJ's initial award in this case did not contain a specific amount of benefits due. Indeed, as the court of appeals acknowledged, "a determination of the amount of temporary benefits is not ripe for administrative processing until liability is finally determined." *DKI Corp./Sylvan Pools*, 169 Ariz. at 364, 819 P.2d at 950. Furthermore, in this case, there is no indication that the amount of benefits could have been accurately determined when the initial award was entered. Thus, we must determine whether an administrative award that fails to fix any specific amount of benefits to be paid (and no specific amount is otherwise determinable when the award is entered) is an "indebtedness ... or other obligation" so that interest begins to accrue.

### 2. *The Liquidated–Unliquidated Test*

The liquidated-unliquidated test generally applies in deciding what constitutes an "indebtedness ... or other obligation" so that interest begins to accrue. *See, e.g., Schade v. Diethrich*, 158 Ariz. 1, 14, 760 P.2d 1050, 1063 (1988) (citing cases); *La Paz County v. Yuma County*, 153 Ariz. 162, 168, 735 P.2d 772, 778 (1987) (citing cases); *Fleming v. Pima County*, 141 Ariz. 149, 155–56, 685 P.2d 1301, 1307–08 (1984) (citing cases). This test allows interest on "liquidated" claims but not on "unliquidated" claims. *La Paz County*, 153 Ariz. at 168, 735 P.2d at 778 (citing cases). " 'A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.' " *Id.* (quoting *Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971)).

Although this court has approved the liquidated-unliquidated test in other contexts, we have not explicitly addressed its applicability to workers' compensation claims. *Tisdel*, however, did not state that workers' compensation claims should be treated differently than other claims. *See DKI Corp./Sylvan Pools*, 169 Ariz. at 365, 819 P.2d at 951 (Jacobson, P.J., concurring in part and dissenting in part). Nor do we believe that *Tisdel* supports the proposition that interest may be awarded on unliquidated workers' compensation awards.

In *Tisdel*, although we held that interest began to accrue in 1971, the exact amount of compensation due was not determined until 1985. *Tisdel*, 156 Ariz. at 212, 751 P.2d at 528. Tisdel's claim, however, was for scheduled benefits, *id.*, meaning that no loss of earning capacity determination was required, *see* A.R.S. § 23–1044(B). If Tisdel's average monthly wage was susceptible to mathematical computation and applied to the statutory payment schedule in 1971, Tisdel's claim would have been liquidated at that time. *See La Paz County*, 153 Ariz. at 168, 735 P.2d at 778; *see also* A.R.S. § 23–1044(B); *DKI Corp./Sylvan Pools*, 169 Ariz. at 365, 819 P.2d at 951 (Jacobson, P.J., concurring in part and dissenting in part) ("In short, the claim in *Tisdel* was liquidated."). Thus, the "obligation" would have come into existence when the notice of claim status was issued—in 1971—and the liquidated-unliquidated test explains *Tisdel*.

We acknowledge some disagreement regarding the across-the-board use of the liquidated-unliquidated test. *Compare La Paz County*, 153 Ariz. at 168–69, 735 P.2d at 778–79 (three member majority applying test) *with id.* at 169–71, 735 P.2d at 779–81 (Feldman, V.C.J., dissenting) (test "has been the subject of persuasive and wide-ranging criticism" and should not apply to restitutionary claims). In light of our many cases applying the test, however, we cannot merely assume that *Tisdel, sub silentio*, eliminated that test for workers' compensation cases. Indeed, it would have been improper to make so great a change in legal principle without any discussion or analysis. We do not believe that the *Tisdel* court had any such intention.

The dissent in *La Paz County* does not mandate a different conclusion. Although that dissent takes exception to the liquidated-unliquidated test for restitutionary claims, *La Paz County*, 153 Ariz. at 170–71, 735 P.2d at 780–81 (Feldman, V.C.J., dissenting), the present case does not involve a restitutionary claim. Millanez, by filing a petition to reopen, did not seek the return of money that had been taken from him. *See id.* at 170, 735 P.2d at 780. A claim for workers' compensation benefits is more akin to a tort case—albeit of the no-fault variety—in which compensation is sought for damages sustained by the victim. Thus, even a rejection of the liquidated-unliquidated test for restitutionary claims would not require an interest award in the present case. *Id.* at 170–71, 735 P.2d at 780–81.

■ Finally, we do not believe it appropriate for this court to make so fundamental a change in the Act. Workers' compensation is a statutory scheme in which the legislature has provided boundaries for what and how much is recoverable and when. *See* A.R.S. § 23–1022(A); *Nation v. Weiner*, 145 Ariz. 414, 420, 701 P.2d 1222, 1228 (Ct.App.1985). Our function is to interpret the Act and to ensure that it complies with constitutional guarantees. The Act neither expressly requires nor prohibits the payment of interest, and accordingly does not purport to reject the liquidated-unliquidated test. As far as we are informed, neither before nor after *Tisdel* has there been any custom or practice rejecting the liquidated-unliquidated test for claims under the Act. Thus, if interest on unliquidated claims is to be awarded in this statutory scheme, the change should be made by the legislature. Such a change, of course, might be entirely salutary, by promoting early settlement.

■ *Tisdel* having applied the general rule—requiring the payment of interest on any "indebtedness ... or other obligation"—to claims under the Act, we conclude that interest accrues only if the sum to be paid is liquidated. Interest can be recovered under the Act only if the facts warrant a finding that the amount owed was liquidated, as that term is used in *La Paz County*. If the amount of benefits to be paid is set forth in an award, notice of claim status, or is otherwise "liquidated," and if the carrier has notice of this liquidated obligation, then the Commission has jurisdiction to award interest and should do so as required by A.R.S. § 44–1201(A). *See Tisdel*, 156 Ariz. at 212–14, 751 P.2d at 528–30. In this case, because the ALJ erred in awarding interest from the filing date of the petition to reopen, the interest award must be set aside.[5]

## DISPOSITION

The portion of the court of appeals' opinion affirming the award of interest on temporary disability benefits from the filing date of the petition to reopen is vacated. The Commission's award is set aside. This case is remanded to the Commission for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

---

5. Having so decided, we do not address Petitioners' retroactivity argument.